DELBELLO DONNELLAN WEINGARTEN
WISE & WEIDERKEHR, LLP
*Attorneys for the Debtor*
One North Lexington Avenue, 11th Floor
White Plains, New York 10601
(914) 681-0200
Jonathan S. Pasternak, Esq.
Erica Feynman Aisner, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
In re:

                                                                   Chapter 11
ALEXANDER M. WALDMAN DIAMOND CO., INC.,    Case No. 14-11660(MG)

                                          Debtor.
------------------------------------------------------------------X

## SECOND AMENDED PLAN OF REORGANIZATION

Alexander Waldman Diamond Co., Inc. proposes the following Second Amended Chapter 11 Plan of Reorganization (the "Plan") pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

### ARTICLE I
### DEFINITIONS

For the purposes of this Plan, the following terms shall have the respective meanings set forth below (such meanings to be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires):

1.1    "Administrative Claims" shall mean all costs and expenses of administration of the chapter 11 case Allowed under Sections 503(b) or 330(a) of the Code and that are entitled to priority under Section 507(a)(2) which may include Claims pursuant to Section 506(c) of the Code.

1.2    "Allowed" shall mean that portion of a Claim or Interest that, (i) has been timely

filed with the Bankruptcy Court and is liquidated in amount and has not been objected to; (ii) has been listed by the Debtor in the Schedules as being neither contingent, unliquidated nor disputed; or (iii) has been allowed by a Final Order of the Bankruptcy Court.

      1.3     "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Southern District of New York.

      1.4     "Cash" shall mean legal tender of the United States of America or cash equivalents.

      1.5     "Claim" is defined in Section 101(5) of the Code, and shall include, without limitation, any claims of whatsoever type or description against the Debtor, any claim for pre-Petition Date interest, post-Petition Date interest or contingent interest, any claim against the Debtor arising out of the rejection of executory contracts, any claim against the Debtor arising from the recovery of property under Sections 550 and 553 of the Code and any claim against the Debtor that does not arise until after the commencement of the chapter 11 case for a tax entitled to priority under Section 507(a) of the Code.

      1.6     "Code" shall mean the Bankruptcy Code, Title 11 U.S.C. Section 101 et. seq. as amended from time to time and applicable to this case.

      1.7     "Confirmation Date" shall mean the date upon which the Confirmation Order is entered by the Bankruptcy Court, but in no event shall the Confirmation Date be later than February 28, 2015. In the event the Confirmation Date does not occur by February 28, 2015, this Plan shall be null and void; provided, however, that Leumi may consent to the extension of the Confirmation Date by providing written notice to the Debtor.

      1.8     "Confirmation Order" shall mean the order of the Bankruptcy Court pursuant to Section 1129 of the Code confirming the Plan.

      1.9    "Debtor" shall mean Alexander M. Waldman Diamond Co., Inc.

      1.10    "Disputed" shall mean a Claim or Interest, or any portion of a Claim or Interest, that is not Allowed and is not either disallowed under a Final Order or has not been withdrawn.

      1.11    "Effective Date" shall mean the date upon which the Confirmation Order becomes a Final Order.

      1.12    "Final Order" shall mean an order or judgment which has not been stayed and as to which order or judgment the time to appeal or seek review or rehearing has expired and as to which no appeal, petition for review or rehearing is pending.

      1.13    "Interest" shall mean the rights of the shareholder of the Debtor.

      1.14    "Leumi" shall mean Bank Leumi USA.

      1.15    "Leumi Allowed Secured Claim" shall mean the Secured Claim of Leumi in an amount no less than $4,100,000 in principal (as of December 23, 2014), less all additional payments received by Leumi through the Confirmation Date, plus unpaid prepetition interest in the approximate amount of $55,000, plus accrued pre-Confirmation Date interest at the contract rate of interest provided for in the Loan Agreement, plus pre-Confirmation Date fees and expenses in the fixed and Allowed amount of $250,000, not subject to offset or counterclaim, which has matured and is due and payable, which Claim is secured by a lien on and against all of the Debtor's assets, the assets of debtor/ affiliate WDC and non-debtor WTC (which collateral pledge is limited to the sum of $1.5 million).

      1.16    "Loan Agreement" shall mean the pre-Petition Date promissory note entered into by Leumi and the Debtor, together with letter agreements, related security agreements and corporate guaranty from WDC and individual guaranties from Alex Waldman and Leon Waldman.

1.17     "Petition Date" shall mean May 30, 2014.

1.18     "Plan" shall mean this Chapter 11 Plan of Reorganization and any amendments hereto or modifications hereof made in accordance with the provisions of the Code.

1.19     "Priority Claim" shall mean a Claim, other than an Administrative Claim, that is entitled to priority under Section 507 of the Code.

1.20     "Secured Claim" shall mean a Claim that is secured by a lien on property of the Debtor's estate in accordance with Section 506(a) of the Code.

1.21     "Schedules" shall mean the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor as required by Section 521 of the Code and Bankruptcy Rule 1007, and all amendments thereto.

1.22     "Unsecured Claim" shall mean any Claim that is not an Administrative Claim, Priority Claim or Secured Claim, including, without limitation, Claims based upon pre-Petition Date trade accounts payable or Claims based upon the rejection of an executory contract during the pendency of the chapter 11 case.

1.23     "WDC" shall mean Waldman Diamonds Complete, LLC, the Debtor's affiliate who is also a chapter 11 debtor in a proceeding pending before the Bankruptcy Court and jointly administered, for procedural purposes only, with the Debtor's Chapter 11 case.

1.24     "WTC" shall mean non-debtor Waldman Trading Company, owned and operated by Leon Waldman, a shareholder of the Debtor.

## ARTICLE II
## DESIGNATION OF CLAIMS AND INTERESTS

All holders of Claims and Interests against the Debtor, of whatever nature, whether or not scheduled or liquidated, absolute or contingent, whether Allowed or not, shall be bound by the

4

provisions of the Plan and are hereby classified as follows:

> **Class 1:** shall consist of the Allowed Secured Claims of Leumi.
>
> **Class 2**:  shall consist of all Allowed Non-Tax Priority Claims.
>
> **Class 3:** shall consist of all Allowed Unsecured Claims.
>
> **Class 4:** shall consist of all Allowed Interests in the Debtor.

In accordance with Section 1123(a)(1) of the Code, Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the foregoing Classes.

### ARTICLE III - TREATMENT OF CLAIMS UNDER THE PLAN

**3.1 Satisfaction of Claims.**  The treatment of and consideration to be received by holders of Allowed Claims shall be in full satisfaction, release and discharge of their respective Claims against the Debtor.

a) <u>Allowed Administrative Claims other than Claims of Professionals:</u>  These Allowed Claims shall be paid in the ordinary course and according to the terms and conditions of the respective contracts with respect to those Claims unless the holder of such Claim agrees to other treatment.

b)  <u>Allowed Administrative Claims of Professionals</u>: Allowed Administrative Claims of DelBello Donnellan Weingarten Wise & Wiederkehr, LLP ("DDWWW") and Hoberman Goldstein & Lesser, P.C. ("HGL") shall be paid in full, in Cash, after the allowance by the Court pursuant to Section 330 of the Code as follows:  DDWWW shall receive: (a) on the Effective Date, or as soon thereafter as its Claim is Allowed, the sum of $75,000 and (b) the balance of its unpaid Allowed Administrative Claims over an approximate ten (10) month period in equal monthly installments of $10,000 until paid in full. DDWWW has accepted such treatment. HGL shall receive the full Allowed amount of its Claim upon the later of (a) allowance by the

5

Bankruptcy Court or (b) as soon as practical after the Effective Date.

c) <u>United States Trustee's Fees</u>: Under the Plan, all United States Trustee statutory fees arising under 28 U.S.C. § 1930 and 31 U.S.C. §3717 shall be paid in full, in Cash, in such amount as they are incurred in the ordinary course of business by the Debtor. The Debtor shall be responsible for the payment of United States Trustee quarterly fees through the entry of a final decree closing the Chapter 11 case.

d) <u>Allowed Priority Tax Claims</u>: Allowed Priority Claims, including such Claims pursuant to 11 U.S.C. § 507(a)(8), if any, shall be paid in full on or shortly after the Effective Date.

**3.2  Class 1**:

3.2(a)  The Leumi Allowed Secured Claim shall be paid as follows:

(i)  Prior to the Confirmation Date, the Debtor shall remit additional payment to Leumi, which shall be applied to outstanding principal in order to reduce the principal balance to no greater than $4 million as of the Confirmation Date;

(ii)  In addition to, and exclusive of, the payments set forth in section 3.2(a)(i), during the period from January 1, 2015 through April 30, 2015 the Debtor shall make minimal monthly payments of $250,000 per month ("Minimum Payment"), and in the aggregate, by the end of such period shall remit an amount equal to $2 million dollars, which payment shall be first applied to outstanding fees incurred prior to December 31, 2014 (fixed at $250,000), then accrued pre-petition interest (approximately $55,000) and then to principal. To the extent that monthly payments exceed the Minimum Payment, the additional amount shall be credited to the Minimum Payment for the next unpaid month. Payment pursuant to this subparagraph are exclusive of any payments required under Sections 3.2 (b) and (c) below; and

(iii)  On or before October 31, 2015, the Debtor shall satisfy the remaining balance on the Leumi Allowed Secured Claim in full.

3.2(b)  From the Confirmation Date and until such time as the Leumi Allowed Secured Claim is paid in full, interest shall continue to accrue thereon at the non-default, contract rate of

6

interest as provided in the Loan Agreement and the Debtor shall continue to pay such interest on a monthly basis. From the Confirmation Date and until such time as the Leumi Allowed Secured Claim is paid in full, the Debtor shall maintain all of its bank accounts with Leumi, and all payments to Leumi pursuant to this Plan shall be debited by Leumi from the Debtor's accounts upon written authorization by authorized personnel of the Debtor or remitted by the Debtor directly. Notwithstanding any provision in this paragraph, nothing herein shall prejudice Leumi's rights under the Loan Agreements in the event of a default of any payment required by this Plan, including Leumi's right to set off.

3.2(c) As of January 1, 2015, the Debtor shall also pay all reasonable ongoing fees and expenses of Leumi, including reasonable legal fees, subject to the limitations set forth in Section 3.2(d) below, which shall be charged to the account upon written notice to the Debtor and Debtor's counsel.

3.2(d) The Debtor shall continue to permit Leumi to monitor the Debtor's operations and inventory by and through no more than weekly on-site visits at the Debtor's business premises by David Bucks at a rate of $200 per hour. Such weekly visits shall continue through the earlier of, (i) week ending March 20, 2015, or (ii) total remittance of the payment by the Debtor set forth in Section 3.2(a)(ii) of this Plan, at which time the monitoring shall be reduced to semi-monthly until the Leumi Allowed Secured Claim is paid in full.

3.2(e) The Debtor shall also permit Leumi's accounting firm, WeiserMazars to perform no more than bi-monthly site visits at the Debtor's business premises through the earlier of, (i) April 30, 2015, or (ii) total remittance of the payment by the Debtor set forth in Section 3.2(a)(ii) of this Plan, and then no more than on a quarterly basis thereafter.

3.2(f) Notwithstanding Sections 3.2(d) and (e) herein, to the extent that David Bucks or WeiserMazars uncover any discrepancies which, in Leumi's opinion, could materially prejudice Leumi's interest and which require further investigation or inquiry, then they will be provided additional time as needed to address those discrepancies.

3.2(g) The Leumi Allowed Secured Claim, the underlying Loan Agreement and related pre and post-Petition Date first priority liens of Leumi in the assets of the Debtor and WDC (the "Debtor Liens") are hereby acknowledged, ratified and reaffirmed by the Debtor and WDC and until such time as the Leumi Allowed Secured Claim is paid in full, shall remain in place and in full force and effect.

3.2(h) The limited corporate guaranty (collateral pledge up to $1.5 million), related security agreement and subordination agreement executed by WTC in favor of Leumi (the "WTC Guaranty") which was executed in order to provide Leumi with additional adequate protection for the continued use of cash collateral by the Debtor, is hereby acknowledged, ratified and reaffirmed and until such time as the Leumi Allowed Secured Claim is paid in full shall remain in place and in full force and effect.

3.2(i) Leumi shall waive all pre-Confirmation Date defaults under the Loan Agreement and until such time as the Leumi Allowed Secured Claim is paid in full and provided that the Debtor is in compliance with the terms of the Loan Agreement and this Plan, Leumi shall agree to forbear from exercising its rights under the Loan Agreement including but not limited to the continued prosecution of the State Court litigation against the Debtor, WDC, Alex Waldman and Leon Waldman (the "State Court Action"), which shall be periodically adjourned as necessary.

3.2(j)  The Debtor shall remain "in formula under the borrowing base," (as that term is more fully defined in the Loan Agreement and as in effect prior to the Petition Date) and shall

continue to provide weekly and monthly borrowing base certificates (in the form as previously provided during the pendency of the Chapter 11 case) as required in the Loan Agreement to Leumi. The foregoing notwithstanding, the Debtor shall be permitted to be "out of formula" for the months of January and February, 2015 in an amount no greater than such payments tendered by the Debtor during that time which are applied to interest and expenses due to Leumi.

3.2(k)  Release of Leumi. The Debtor, WDC, WTC, Alex Waldman and Leon Waldman hereby release and discharge Leumi (including all officers, directors, agents, attorneys and employees and its successors and assigns), from any and all claims, demands, debts, accounts, contracts, liabilities, actions and causes of actions, whether in law or in equity, arising out of or relating to the Loan Agreement and WTC Guaranty, from the beginning of the world to the Effective Date, except with respect to continuing obligations set forth in this Plan and the Loan Agreement.

3.2(l)  Release of the Debtor and Guarantors. Upon payment of the Leumi Allowed Secured Claim in full, Leumi shall release and discharge the Debtor, WDC, WTC, including all respective officers, directors, agents, attorneys, employees, successors and assigns, Alex Waldman and Leon Waldman, including their respective agents, attorneys, heirs and assigns, from all claims, demands, debts, accounts, contracts, liabilities, actions and causes of actions, security interests, mortgages, liens, pledges, charges and other encumbrances in favor of Leumi which secured the Leumi Allowed Secured Claim, the Loan Agreement and/ or the WTC Guaranty, whether in law or in equity, arising out of or relating to the Leumi Allowed Secured Claim, the Loan Agreement and WTC Guaranty.

3.2(m) Upon payment in full of the Leumi Allowed Secured Claim, the Debtor, WDC, WTC and/or their respective designee, shall each be authorized to terminate any Uniform

9

Commercial Code Financing Statement filed in the State of New York listing Leumi as secured party and the Debtor, WDC and/or WTC as the debtor and all guaranties of the Loan Agreement shall be deemed released and the Loan Documents and the WTC Guaranty terminated, canceled and of no further force and effect. In addition, Leumi shall immediately discontinue the State Court Action with prejudice.

The Leumi Allowed Secured Claim is impaired and is entitled to vote to accept or reject this Plan.

**3.3** **Class 2:** Holders of Allowed Non-Tax Priority Claims, if any, shall be paid in full with statutory interest on the Effective Date. The Allowed Class 2 Claims are unimpaired under this Plan and are deemed to accept this Plan.

**3.4** **Class 3:** Holders of Allowed Unsecured Claims shall each receive a 100% distribution on account of Allowed Class 3 Unsecured Claims, without interest, payable in 8 quarterly installments of 12.5% each, commencing on the earlier of (a) one month following payment in full of the Leumi Allowed Secured Claim, or (b) November 30, 2015. Allowed Class 3 Claims are impaired under this Plan and holders of such Claims shall be entitled to vote to accept or reject this Plan.

**3.5** **Class 4:** The holders of the Allowed Interests shall retain their Interests in the reorganized Debtor, strictly subject to acceptance of the Plan by Class 3 Unsecured Creditors. The holders of Class 4 Interests are therefore unimpaired under this Plan and thus are not entitled to vote to accept or reject this Plan.

**3.6 Acceptance by Impaired Class of Claims.** Classes 1 and 3 shall have accepted the Plan if (i) the holders of at least two-thirds in amount of the Allowed Claims actually voting have voted to accept the Plan and (ii) more than one-half in number of the holders of such

Allowed Claims actually voting have voted to accept the Plan.

**3.7    Presumed Acceptance of the Plan**. Classes 2 and 4 are deemed unimpaired under the Plan, and, therefore, are deemed to accept the Plan under Section 1126(f) of the Bankruptcy Code.

## ARTICLE IV
## MEANS FOR EXECUTION

**4.1    Distributions of Cash.**  Except as otherwise provided in the Plan, including without limitation Article VIII of this Plan, the Cash required to be first distributed to holders of Allowed Claims under the Plan shall be distributed by the Debtor within ten (10) days after the Effective Date except that to the extent that a Claim becomes an Allowed Claim after such date, in which case distribution shall be made, within ten (10) days after the order allowing such Claim becomes a Final Order.

**4.2    Means For Implementation.**  The Plan shall be funded with the Debtor's cash on hand and ongoing cash flow from its ordinary course operations following the Confirmation Date.

## ARTICLE V
## EXECUTORY CONTRACTS

**5.1    Assumption**.  On the Effective Date all executory contracts and unexpired leases to which the Debtor is a party, which have not previously been rejected, shall be deemed assumed.

## ARTICLE VI
## GENERAL AND MISCELLANEOUS PROVISIONS

**6.1    Modification of the Plan**.  The Debtor reserves the right to amend or modify the Plan in accordance with Section 1127 of the Code.

**6.2    Article and Section References.** Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

**6.3    Payment Dates.** If any payment or act under the Plan is required to be made or falls on a date which shall be a Saturday, Sunday or a legal holiday, the making of such payment or performance of such act may be completed on the next succeeding business day, and shall be deemed to have been completed timely. Any payment required under the Plan shall be deemed to have been paid on the date when such payment is mailed or in the case of payments to Leumi, when such payment is debited from the Debtor's account.

**6.4    Notices.** Any notices to be forwarded under the Plan shall be in writing and sent by certified mail, return receipt requested, postage pre-paid; or by overnight mail or hand delivery, addressed as follows:

If to the Debtor:            Alexander M. Waldman Diamond Co., Inc.
                             Mr. Gershon Seymour, Chief Financial Officer
                             30 West 47th Street, 8th Floor
                             New York, New York 10036

with a copy to:
Counsel for the Debtor       DelBello Donnellan Weingarten
                             Wise & Wiederkehr, LLP
                             One North Lexington Ave.
                             White Plains, New York 10601
                             Attn:   Jonathan S. Pasternak, Esq.

The Debtor may designate in writing any other address for purposes of this section, which designation shall be effective upon receipt.

**6.5    Enforceability.** Should any provision in the Plan be determined to be

12

unenforceable, such determination shall in no way limit or affect the enforceability or operative effect of any and all other provisions of the Plan.

**6.6    Applicable Law.** Except to the extent that the Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York, except to the extent that other provisions of Federal law are applicable.

**6.7    Successors and Assigns.** The rights and obligations of any entity named or referred to in the Plan shall be binding upon and inure to the benefit of the successors and assigns of such entity.

**6.8    Reservation of Rights.** Neither the filing of this Plan, nor any statement or provision contained herein, shall be or be deemed to be an admission against interest. In the event that the Effective Date does not occur, neither this Plan nor any statement contained herein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside of this chapter 11 case.

**6.9    U.S. Trustee Fees and Post Confirmation Reports.** The Debtor shall be responsible for filing post-Confirmation Date reports with the Bankruptcy Court, and shall pay all quarterly fees required under 28 U.S.C. § 1930 and applicable interest under 31 U.S.C. § 3717, until the earlier of (a) conversion or dismissal of the Chapter 11 Case or (b) entry of a final decree closing the Chapter 11 Case.

### ARTICLE VII
### RESOLUTION OF DISPUTED CLAIMS & RESERVES

**7.1 Objections**. An objection to either the allowance of a Claim or an amendment to the Debtor's Schedules shall be in writing and may either be filed with the Bankruptcy Court or

13

pursued and resolved by other means by the Debtor at any time on or before the Effective Date, subject to an extension of such deadline by the Bankruptcy Court, for cause.

. **7.2 Amendment of Claims**. A Claim may be amended after the Confirmation Date only as agreed upon by the Debtor and the holder of such Claim and as approved by the Bankruptcy Court or as otherwise permitted by the Code and Bankruptcy Rules.

**7.3 Reserve for Disputed Claims**. The Debtor shall reserve, in a separate account, held in trust for distribution pursuant to this Section, on account of each holder of a Disputed Claim, in Cash, the amount that would otherwise be distributable on such date and thereafter to such holder were such Disputed Claim an Allowed Claim on the Effective Date. The Cash so reserved for the holder of such Disputed Claim shall be distributed as provided in Section 4.1 hereof after such Disputed Claim becomes an Allowed Claim, in the amount allocable under Section 3 hereof to such Allowed Claim. The holder of a subsequently Allowed Claim shall not be entitled to any interest on the Allowed Claim, regardless of when distribution thereon is made to or received by such holder.

## ARTICLE VIII
## EFFECT OF CONFIRMATION, DISCHARGE, SURRENDER AND CANCELLATION OF CLAIMS

**8.1 Vesting of Property.** On the Confirmation Date, title to and possession of any and all property of the Debtor's estate shall be re-vested in the reorganized Debtor free and clear of all liens, claims, interests and encumbrances of any kind, subject to and except as otherwise provided in the Plan.

**8.2 Discharge Granted Under Plan.** The Debtor shall receive a discharge in the Confirmation Order, which shall be governed by Code section 1141(d)(1).

**8.3  Releases.** The consideration distributed under the Plan shall be in exchange for and in complete satisfaction and release of all Claims of any nature against the Debtor, the reorganized Debtor or any of the assets of the estate.

**8.4   Exculpation.** *Subject to the limitations set forth in Section 1125(e) of the Bankruptcy Code, Neither the Debtor, Leumi nor any of their interest holders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns (the "Released Parties") shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, confirmation or consummation of the Plan, the Disclosure Statement or the Plan except with respect to its obligations under the Plan, with the exception of any such act or omission taken in bad faith, willful misconduct, gross negligence, breach of fiduciary duty, malpractice, fraud, criminal conduct, unauthorized use of confidential information that causes damages, and/or ultra vires acts. Notwithstanding any other provision hereof, nothing contained in this Section shall (a) effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties, nor shall anything in this section enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against any Released Party referred to herein for any liability whatever, including, without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority, nor shall anything in this Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority*

*whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Parties referred to herein, or (b) limit the liability of the Debtor's professionals pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct.*

**8.5  Confirmation Injunction.** *Except for the treatment specified in, and as otherwise expressly provided in the Plan, any and all entities who have held, hold or may hold Claims or Interests, including Administrative Claims, against or in the Debtor shall, as of the Effective Date, be enjoined from:*

*(a) commencing, conducting, or continuing, in any manner, any suit, action, or other proceeding of any kind (including, without limitation, in any judicial, arbitral, administrative or other forum) against the Debtor or reorganized Debtor with regard to such entity's Claim against the Debtor;*

*(b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collection or otherwise recovering by any manner or means, whether directly or indirectly, or any judgment, award, decree, or order against the Debtor or reorganized Debtor with regard to such entity's Claim against the Debtor;*

*(c) creating, perfecting or otherwise enforcing, in any manner, directly or indirectly, any encumbrance of any kind against the Debtor or reorganized Debtor, the property of the Debtor or reorganized Debtor, or any successor-in-interest to the Debtor or reorganized Debtor with regard to such entity's Claim against the Debtor;*

*(d) asserting any set off, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due the Debtor, the property of the Debtor, or any successor-in-interest to the Debtor with regard to such entity's Claim against the Debtor; and*

*(e) acting in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.*

## ARTICLE IX
## DISTRIBUTIONS AND UNCLAIMED PAYMENTS

Except as otherwise provided herein, in the event any claimant fails to claim any distribution hereunder within 120 days from the date of such distribution, such claimant shall forfeit all rights thereto, and to any and all future payments, and thereafter the Claim for which such Cash was distributed shall be treated as a disallowed Claim. Distributions to Claimants entitled thereto shall be sent to their last known address set forth on a proof of claim filed with the Bankruptcy Court or, if no proof of claim is filed, on the Schedules filed by the Debtor or to such other address as may be later designated by a creditor in writing to the Debtor. The Debtor shall use its best efforts to obtain current addresses for all claimants. All unclaimed cash shall be returned to the reorganized Debtor.

## ARTICLE X
## EVENTS OF DEFAULT

10.1  An event of default shall occur if the Debtor shall fail to make any payment when due under the Plan or shall fail to comply with any other material terms of this Plan, and written notice of same has been provided to the Debtor, the Debtor's bankruptcy counsel and the Bankruptcy Court.

10.2  Following an event of default, if such default has not been cured within ten (10) days thereafter, any holder of a Claim, payment of which is in default, shall have the right to (a) accelerate and demand payment due to such holder under the Plan; and/or (b) commence an action against the Debtor in the Bankruptcy Court or United States District Court to compel payment or otherwise to enforce the default.

# ARTICLE XI
# RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of this chapter 11 case:

(a)  To determine all controversies relating to or concerning the allowance of and/ or distribution on account of Claims or Interests upon objection thereto, including the estimation of any Claim under Section 502(c) of the Code;

(b)  To determine requests for payment of Claims entitled to priority under Section 507(a)(2) of the Code, including any and all applications for compensation for professional fees and expenses;

(c)  To determine any and all applications, adversary proceedings, and contested or litigated matters over which the Bankruptcy Court has subject matter jurisdiction pursuant to 28 U.S.C Sections 157 and 1334;

(d)  To determine all disputed, contingent or unliquidated Claims;

(e)  To determine requests to modify the Plan pursuant to Section 1127 of the Code or to remedy any defect or omission or reconcile any inconsistencies in this Plan or Confirmation Order to the extent authorized by the Code;

(f)  To make such orders as are necessary or appropriate to carry out the provisions of, and to enforce, the Plan;

(g)  To resolve controversies and disputes regarding the interpretation or enforcement of the terms of the Plan; and

(h)  To enter a final decree closing this chapter 11 case.

Dated:  New York, New York
December 31, 2014

| ALEXANDER M. WALDMAN DIAMOND CO., INC. | DELBELLO DONNELLAN WEINGARTEN WISE & WEIDERKEHR, LLP |
|---|---|
| | *Attorneys for the Debtor* |
| By: */s/ Gershon Seymour* | By: */s/ Jonathan S. Pasternak* |
| Gershon Seymour, Chief Financial Officer | Jonathan S. Pasternak. One North Lexington Ave. White Plains, New York 10601 (914) 681-0200 |

Subjoined Consent for section 3.2 only:

WALDMAN DIAMONDS COMPLETE, LLC

By: */s/ Gershon Seymour*
   Gershon Seymour,
   Chief Financial Officer

WALDMAN TRADING COMPANY

By: */s/ Leonard Waldman*
   Leonard Waldman

LEONARD WALDMAN
Individually

By: */s/ Leonard Waldman*

ALEXANDER WALDMAN
Individually

By:   */s/ Alexander Waldman*

19